**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
──────────────────────────────────

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

                        **v.**          **08-CR-117A(Sr)**

**NORMAN S. CARAWAY,**

        **Defendant.**

──────────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara,

in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report

upon dispositive motions. Dkt. #12.


The defendant, Norman S. Caraway, has been charged in a Superseding

Indictment with failing to register as a sex offender and possession of child

pornography. Specifically, Count 1 of the Superseding Indictment charges that the

defendant, a person required to register under the Sex Offender Registration and

Notification Act, traveled in interstate commerce and knowingly failed "to register and

update a registration as required by the Sex Offender Registration and Notification Act"

("SORNA") in violation of Title 18, United States Code, § 2250. Dkt. #38. The

defendant is charged in Count 2 of the Superseding Indictment with the knowing

possession of child pornography in violation of Title 18, United States Code, Section

2252A(a)(5)(B).

Presently pending before this Court are the following motions: defendant's motion to dismiss the Superseding Indictment (filed by counsel for the defendant) on the grounds that SORNA is unconstitutional and that venue is improper in the Western District of New York (Dkt. #52)[1]; defendant's *pro se* motion to dismiss the Superseding Indictment on the grounds that SORNA is "punitive in nature and operation" (Dkt. #53); defendant's motion to suppress physical evidence (Dkt. #52); defendant's motion to suppress statements (Dkt. #52); defendant's motion to sever (Dkt. #52)[2]; and defendant's *pro se* motion to change counsel (Dkt. #54).[3] The government filed a

---

[1] Initially, the defendant was charged in a one-count Indictment with having failed "to register and update a registration as required by the Sex Offender Registration and Notification Act" as a result of being a "person required to register" who "traveled in interstate or foreign commerce" in violation of 18 U.S.C. § 2250. Dkt. #1. With respect to the original Indictment, the defendant filed a motion to dismiss on various constitutional grounds. Dkt. #14. On April 3, 2009, this Court issued its Report, Recommendation and Order recommending that defendant's motion to dismiss the original Indictment be denied in its entirety. Dkt. #26. United States District Judge Richard J. Arcara adopted this Court's Report, Recommendation and Order on May 15, 2009. Dkt. #33. Thereafter, as described above, the Federal Grand Jury returned a two-count Superseding Indictment against the defendant. Dkt. #38. Counsel for the defendant readily concedes that the presently pending motion to dismiss the Superseding Indictment raises, in part, the identical arguments presented in defendant's motion to dismiss the original Indictment and are being raised simply to "preserve the issues." Dkt. #52.

[2] Defendant's motion to sever will be the subject of a separate Decision and Order.

[3] During oral argument on defendant's motions held on August 13, 2009, this Court denied defendant's *pro se* motion to change counsel. Also during oral argument, the defendant acknowledged that the basis for his motion to change counsel was premised on a perceived denial of his right to be heard in violation of the United States Constitution. However, the defendant stated that his right to be heard had not been abridged and as such, the issue was not ripe for judicial review. Accordingly, defendant's *pro se* motion to change counsel (Dkt. #54) has been denied without prejudice to the defendant to renew such motion at such time as that motion may be ripe for judicial review.

consolidated response to defendant's motions to suppress and to dismiss. Dkt. #56.

Thereafter, this Court issued a Decision and Order directing that an evidentiary hearing

be held with respect to the following four issues. Dkt. #59. First, whether the

defendant's August 12, 2007 encounter with North Tonawanda Police Department

Officer Josh Cress resulted in a custodial interrogation, and if so, whether the

defendant was given *Miranda* warnings prior to the interrogation and whether the

defendant's statements given to Officer Cress were voluntary. Second, whether the

statements given by the defendant to Amherst Police Department Officer Scott Preston

on February 14, 2008 were made during a custodial interrogation, and if so, whether the

defendant was given *Miranda* warnings prior to the interrogation and whether the

defendant's statements given to Officer Preston were voluntary. Third, whether the

interview of the defendant conducted by Amherst Police Department Detectives

Matthew Gould and Warren Olsen on February 14, 2008, following the defendant's

arrest and an inventory search of the vehicle driven by the defendant, was a custodial

interrogation, and if so, whether the defendant was given *Miranda* warnings prior to the

interrogation and whether the defendant's statements to Detectives Gould and Olsen

were voluntary. And fourth, whether prior to the February 25, 2008 interview of the

defendant at the Erie County Holding Center by Federal Bureau of Investigation ("FBI")

Special Agent Michael Shaffer and FBI Task Force Officer Joseph Ahmed, the

defendant was given *Miranda* warnings and whether the defendant's statements were

voluntary. *Id*.

The evidentiary hearing was held on October 1, 2009 and continued on October 7, 2009. As will be discussed in greater detail below, during the evidentiary hearing, the defendant developed another theory on which he now seeks the suppression of physical evidence, *to wit*, the unlawful search of the defendant's vehicle under the guise of an inventory search. Post-hearing memoranda were filed on November 30, 2009, and reply papers were filed on December 2, 2009 and December 4, 2009. Dkt. ##67-70. For the following reasons, it is recommended that defendant's motions to dismiss (Dkt. ##52 (filed by counsel) and 53 (*pro se*)) the Superseding Indictment be denied. It is further recommended that defendant's motion to suppress physical evidence and statements (Dkt. #52) be denied.

## **FACTS**[4]

### **Prior Convictions**

On June 11, 1998, the defendant, by reason of his plea of guilty, was convicted of "sexual exploitation of a minor" in violation of Colorado law and was adjudged a sexual offender who was required under Colorado law to register as a sex offender. Dkt. #56, pp.2-4. On March 18, 2003, the defendant signed the Colorado Department of Corrections Notice To Register as a Sex Offender Form wherein he acknowledged the requirement to register as a sex offender with the local law

---

[4] The facts as set forth below are taken, in part, from this Court's prior Report, Recommendation and Order filed April 3, 2009 (Dkt. #26), as well as from the "Government's Consolidated Response to Defendant's Motions to Suppress and Dismiss" (Dkt. #56), and the transcripts from the evidentiary hearing (Dkt. ##65-66).

enforcement agency where he resides and to notify the local law enforcement agency upon a change of address as well as registering within five days of moving to a new jurisdiction. *Id*. at p.4.

Sometime between March 18 and April 20, 2003, the defendant moved from Colorado to Florida where he was required to register as a sex offender under Florida law. *Id*. On April 30, 2003, March 2, July 9, and August 19, 2004, the defendant signed the Florida Sexual Predator/Sexual Offender Registration Form wherein he acknowledged his requirement to notify the sheriff's office of his intention to leave the State of Florida and to register in any new state in which he became a resident. *Id*. at pp.4-5.

On August 19, 2005, the defendant plead guilty in the State of Arizona to two counts of sexual exploitation of a minor in violation of Arizona law for which he was given a prison sentence and required to register as a sex offender. *Id*. at p.5.

On November 15, 2005, May 15 and July 31, 2006, the defendant signed the Arizona Department of Health Sex Offender Registration Form wherein he acknowledged that he was required to notify the sheriff's office within 72 hours of any change of residence, both in state and out of state as well as being required to register in any new state of residence. *Id*. at p.6.

**August 12, 2007 Encounter with North Tonawanda Police Department Officer**

Sometime in August 2007, the defendant relocated to Buffalo, New York. Dkt. #56, p.6. On August 12, 2007 at approximately 12:46 a.m., North Tonawanda Police Department Officer Josh Cress responded to a suspicious person report at the Bishop Gibbons Apartment complex located at 1110 Payne Avenue, North Tonawanda, New York. Dkt. #65, p.4. Officer Cress testified during the evidentiary hearing that upon his arrival at the Bishop Gibbons Apartment complex, he observed a gentleman standing by the rear of a vehicle, moving items around. *Id*. at p.5. Officer Cress further testified that he asked the gentleman what he was doing and also asked the gentleman for some identification. *Id*. at p.6. In response, the gentleman produced a photo identification in the name "Caraway" and explained that he was there with a friend visiting a friend's father. *Id*. at pp.6-7. Thereafter, Officer Cress testified that he radioed the individual's name and date of birth to the dispatcher for a warrant check and that check was negative. *Id*. at pp.7-8. Officer Cress further testified that at no time during this approximately ten minute conversation did he ever restrain the individual who identified himself as "Caraway" or tell him he was not free to leave. *Id*. at p.8. Finally, on cross-examination Officer Cress testified that in all respects, his August 12, 2007 encounter with the defendant was a "volunteer encounter." *Id*. at p.9.

On August 23, 2007, the defendant began working as a technician with a data systems business located in Williamsville, New York. Dkt. #56, p.6. On that same day a petition was filed with the Arizona Superior Court seeking revocation of

defendant's probation and on September 6, 2007, a bench warrant was issued for his arrest. *Id.*

**February 14, 2008 Arrest**

On February 14, 2008 at approximately 11:45 a.m., Amherst Police Department Officer Scott Preston responded to a suspicious person call at the NOCO gas station at Main Street and Youngs Road in Amherst. Dkt. #65, p.11. Officer Preston testified at the evidentiary hearing that "it was reported that an Aztek with Arizona plates was parked on the lot and that possibly the owner of the vehicle was an absconder from the State of Arizona." *Id.* Officer Preston spoke with the store clerk who advised him that there were no problems at the store, at which time, Officer Preston returned to his patrol. *Id.* at p.13. Later that day, at approximately 2:45 p.m., Officer Preston received a repeat call for a suspicious person at the NOCO at Main Street and Youngs Road. *Id.* at p.14. The call came from a former co-worker of the "suspicious person" and Officer Preston testified that "I believe that the caller believed the subject should not have been in the area anymore because of the termination." *Id.* The call concerned the same vehicle and the same person as the previous call. *Id.* At approximately 3:00 p.m., Officer Preston returned to the NOCO gas station and observed the same Pontiac Aztek parked in the same location in the parking lot. *Id.* at p.15. Upon entering the NOCO gas station, Officer Preston testified that he recognized someone from his first call to that location sitting against the east wall of the NOCO store working on a computer. *Id.* at p.16.

Thereafter, Officer Preston testified that he approached the individual and asked if he was the owner of the Pontiac Aztek and when the individual replied that he was, Officer Preston asked him if he was willing to step outside and speak with him.  *Id*.  Officer Preston further testified that the individual was very cooperative and that he recalled the individual packing up his computer and putting everything away and going outside with him.  *Id*. at p.17.  After asking the individual for identification, Officer Preston testified that he disclosed to the defendant the nature of the call concerning a suspicious person and he asked the defendant why he was in the area.  *Id*. at pp.18-19.  According to Officer Preston, in response, the defendant stated that he was at the NOCO gas station using the free Internet service to look for jobs in the area.  *Id*. at p.19.  In addition, Officer Preston testified that during the conversation the defendant indicated that he had been in Western New York since August 2007 and further that "he was a sexual offender and that he had not registered in New York State and did not even know how to do that."  *Id*.  Following what Officer Preston described as a cordial conversation, Officer Preston contacted his dispatcher to run a warrant check on the defendant.  *Id*. at p.21.  Officer Preston testified that the dispatcher advised him that there was a warrant for the defendant, that there were orders on the warrant concerning extradition and that a further inquiry would need to be made to verify extradition.  *Id*. at p.22.  The dispatcher confirmed with Officer Preston the existence of the warrant and the desire of the issuing jurisdiction (Arizona) to extradite the defendant.  *Id*.  At that point in time, Officer Preston testified that he placed the defendant under arrest.  *Id*.

## Inventory Search

After Officer Preston arrested the defendant on the outstanding warrant, another Amherst Police Department Officer, Officer Nick Scioli, arrived at the location to conduct an inventory search of the defendant's vehicle while Officer Preston escorted the defendant to the police department. *Id*. at p.24. Officer Scioli testified during the evidentiary hearing that consistent with Amherst Police Department Policy, he contacted his supervisor, Lieutenant Fels, to request a tow of the defendant's vehicle; the supervisor approved the tow and thereafter, the tow company was contacted and a tow truck was dispatched. Dkt. #66, pp.21-22. Officer Scioli further testified that while he was waiting for the tow truck to arrive, he began an inventory search of the defendant's vehicle. *Id*. Shortly after he began the inventory, Officer Scioli testified that he found pieces of identification in names other than that of the defendant, a computer and some computer equipment. *Id*. at p.23. After locating the pieces of identification, Officer Scioli contacted Lieutenant Fels and Lieutenant Fels ordered Officer Scioli to have the vehicle towed to the Amherst Police Department. *Id*. at pp.23-24.

Once the vehicle was towed to the Amherst Police Department, Officer Scioli testified that he continued with the inventory search. *Id*. at p.24. Officer Scioli further testified that in addition to the items referenced above, he also located a tripod, a camera and adult pornography. *Id*. Specifically, the following items were found during the inventory search of the vehicle: three out-of-state identification cards each bearing the defendant's photograph, however, each card listed a different name; a

Green Dot Visa debit card in the name of Jerome Kacmarek; a briefcase; a Dell

Inspiron laptop computer; electronic storage media; and boxes of adult pornographic

magazines and videos.  Dkt. #56, p.7.


**Amherst Police Department Policy for Towing, Impounding
and Inventorying Vehicles Encountered During Police Activities**

Amherst Police Department Lieutenant Paul Fels testified during the

evidentiary hearing concerning the Amherst Police Department's policy regarding

towing, impounding and inventorying of vehicles when encountered during police

activities. *See* Dkt. #66, pp.38-52; Government Exhibit 4.[5]  Lieutenant Fels testified that

the Amherst Police Department's policy has been in effect since 1991.  Dkt. #66, p.39.

Specifically, with respect to conducting an inventory, the policy states, in part,

> \*     An inventory will be conducted on all vehicles towed
>       at the direction of a police officer unless a vehicle is
>       to be processed [ ] evidence or is towed at the
>       owner's request.
> \*     The purpose of the inventory is to protect against
>       false claims of lost, stolen or vandalized property and
>       to guard against [ ] storage of dangerous articles.


Government Exhibit 4.  In addition to the foregoing, Lieutenant Fels testified that he

recalled receiving a call from Officer Scioli on February 14, 2008 concerning an arrest

that had been made at the NOCO service station on Main Street and Youngs Road and

wherein Officer Scioli requested authorization for a tow.  Dkt. #66, pp.40-41.  Lieutenant

Fels further testified that he authorized the tow because "it's [Amherst Police

---

[5] All references herein to "Government Exhibit" are to the exhibits admitted into
evidence during the evidentiary hearing.

Department] policy, when an arrest is made, to impound the – to tow the vehicle and impound it for reasons of safekeeping and possible evidentiary discovery." *Id*. at p.41.

**February 14, 2008 Interview**

Following the completion of the inventory search of the defendant's vehicle, Amherst Police Department Detectives Matthew Gould and Warren Olsen interviewed the defendant at the Amherst Police Station. Dkt. #56, p.7. Detective Gould testified at the evidentiary hearing that on February 14, 2008 in the afternoon/evening, he interviewed the defendant. Dkt. #66, p.5. Detective Gould further testified that at the outset of that interview he read the defendant his "*Miranda* warnings" from the card taped to the inside of his pocket calendar. *Id*. at p.7. According to Detective Gould, after he was read his *Miranda* warnings, the defendant stated that he did not wish to incriminate himself. *Id*. at p.8. However, the defendant did engage in a conversation with Detective Gould. *Id*. at p.9. Specifically, the defendant stated that he was on probation from the Phoenix, Arizona area and that he was a level 2 registered sex offender from Arizona. *Id*. According to Detective Gould, the defendant further stated that the conditions of his probation provided that he was not to leave the county in which he lived. *Id*. In addition, Detective Gould testified that the defendant stated that he left the Phoenix area because of "the stigma that comes along with his situation as being a registered sex offender. I believe he mentioned some flyers going out, and his neighbors knew who he was, and there was a stigma attached to that." *Id*. at pp.9-10. Finally, Detective Gould testified that at no time during

the interview did the defendant ask for an attorney or ask to end the conversation.  *Id*.

at p.10.

**February 25, 2008 Interview**

On February 25, 2008, FBI Special Agent Michael Shaffer and FBI Task

Force Officer Joseph Ahmed interviewed the defendant at the Erie County Holding

Center.  Dkt. #56, p.8.  Special Agent Shaffer testified during the evidentiary hearing

that prior to the interview, the defendant was advised of his rights, the defendant

executed the Advice of Rights form indicating that he understood his rights and was

willing to answer questions without a lawyer present.  Government Exhibit 1; Dkt. #65,

p.34.  According to Special Agent Shaffer's testimony, during the interview, the

defendant admitted that the laptop that was in his vehicle belonged to him.  Dkt. #65,

p.38.  However, the defendant declined to give the agents consent to search the laptop.

*Id*. at p.38.

**Original Indictment**

On April 30, 2008, a Federal Grand Jury returned a one-count Indictment

charging the defendant with failing to register as a sex offender in violation of Title 18,

United States Code, Section 2250.  Specifically, the Grand Jury charged:

> In or about August 2007, in the Western District of New
> York, the defendant, Norman S. Caraway, a person required
> to register under the Sex Offender Registration and
> Notification Act, traveled in interstate or foreign commerce,
> and did knowingly fail to register and update a registration as

required by the Sex Offender Registration and Notification
Act.

Dkt. #1.

## Search of the Laptop Computer, Briefcase and Electronic Storage Media

On July 16, 2008, a federal search warrant was executed on the laptop computer, the briefcase and the electronic storage media found in the defendant's vehicle. Dkt. #56, p.8. A forensic analysis was conducted of the laptop computer and the electronic storage media by Detective Chad Munroe of the Syracuse, New York Police Department. *Id*. During the forensic analysis, Detective Munroe located several image files consistent with the three out-of-state identification cards located in the defendant's vehicle at the time of his February 14, 2008 arrest. *Id*. In addition, Detective Munroe located several images of what appeared to be child pornography on the hard drive of the Dell Inspiron laptop computer. *Id*.

## July 24, 2008 Guilty Plea

On July 24, 2008, the defendant plead guilty to Identity Theft in the Third Degree in violation of New York Penal Law § 190.78(1). Dkt. #56, pp.8-9. Sentencing in that matter has been adjourned pending the resolution of the instant case. *Id*. at p.9.

**Superseding Indictment**

As noted above, on June 3, 2009, a Federal Grand Jury returned a two-count Superseding Indictment again charging the defendant with failure to register as a sex offender as required by SORNA in violation of Title 18, United States Code, Section 2250(a) and adding the charge of possession of child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B). Dkt. #38.

## DISCUSSION AND ANALYSIS

**Motions to Dismiss**

As discussed above, there are presently pending two motions to dismiss the Superseding Indictment. Dkt. ## 52 and 53. The first motion to dismiss was filed by counsel for the defendant (Dkt. #52) and counsel for the defendant unequivocally states that many of the arguments raised in the instant motion are identical to those arguments which were raised in defendant's motion to dismiss the original Indictment (Dkt. #14). Dkt. #52, p.9. Moreover, counsel for the defendant states that the arguments previously made are being raised again with respect to the Superseding Indictment so that the issued may be preserved. *Id*. Based on the representations made by counsel for the defendant with respect to the arguments raised in the instant motion to dismiss filed by counsel for the defendant (Dkt. #52), this Court hereby incorporates by reference its previous Report, Recommendation and Order (Dkt. #26) recommending that the first motion to dismiss (Dkt. #14) be denied in its entirety. Thereafter, this Court's Report, Recommendation and Order (Dkt. #26) was adopted by

United States District Judge Richard J. Arcara (Dkt. #33). Accordingly, for the reasons set forth in this Court's previous Report, Recommendation and Order (Dkt. #26), it is hereby recommended that defendant's motion to dismiss the Superseding Indictment be denied in its entirety.

The second motion to dismiss that is presently pending before this Court is the defendant's *pro se* motion to dismiss the Superseding Indictment on the grounds that SORNA is "punitive in nature and operation." Dkt. #53. As set forth in the opening paragraphs of defendant's *pro se* motion, "attempt was made, in good faith, to have defense counsel, John Humann, present the enclosed arguments to the court, but he refused," therefore, the Court will consider the additional arguments raised by the defendant in support of his motion to dismiss the Superseding Indictment. *See* Dkt. #53. Specifically, in his *pro se* motion to dismiss, the defendant claims that "SORNA is Unconstitutional [sic] as applied in this case, and/or Wholly [sic] Unconstitutional [sic] in all aspects." Dkt. #53, p.2. The arguments presented by the defendant in his *pro se* motion to dismiss will be addressed below under the headings, *Ex Post Facto* Clause, Tenth Amendment and Additional Arguments.

**_Ex Post Facto_ Clause**[6]

First, the defendant argues that "[t]he alleged offense for which defendant was previously convicted (under State law) occurred in 1998.[7]  SORNA had not yet been enacted at the time of the offense.  Any punishment of the defendant under SORNA is an 'Ex Post Facto Law', which is prohibited pursuant to Article 1 § 9, Clause 3 of the USC; Article 11 (2) of the UDHR; Article 14 (7) and 15 (1) of the ICCPR; and Article 9 of the ACHR. Such punishment would constitute a 'heavier penalty than was applicable at the time of the offense.'" Dkt. #53, p.15.  Following Senior United States District Judge Thomas J. McAvoy's reasoning set forth in _United States v. Van Buren, Jr._, defendant's argument is without merit.

> Because SORNA is applicable to him, and because [the defendant] is charged with violating § 2250 for conduct that occurred after SORNA was enacted, there is no _Ex Post Facto_ Clause violation.  _See Collins v. Youngblood_, 497 U.S. 37, 41-42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (A law violates the _Ex Post Facto_ Clause if it imposes a punishment for an act that was not criminal at the time it was committed or it imposes a punishment greater than that which was originally prescribed at the time the offense was committed.); _United States v. May_, __ F.3d __, __, 2008 WL 2917766, at *7 (8th Cir. July 31, 2008) (rejecting an _Ex Post Facto_ Clause challenge to SORNA).

_United States v. Van Buren, Jr._, 2008 WL 3414012, at *7 (N.D.N.Y. Aug. 8, 2008).  As with the defendant in _United States v. Van Buren, Jr._, the defendant here is charged

---

[6] The Court notes that although the defendant claims that the arguments raised in his _pro se_ motion to dismiss were not previously raised by his counsel in the motion to dismiss prepared and filed by his counsel, defendant's counsel did in fact raise the argument that SORNA violated the _Ex Post Facto_ Clause.

[7] The Court notes that the defendant was also convicted of a crime, for which he was required to register, in 2005.

with violating Title 18, United States Code, Section 2250 for conduct that occurred after SORNA was enacted.

### Tenth Amendment

The defendant further argues that "[t]he effect of SORNA is to make it a federal crime for someone to violate a state law. This is a clear violation of the 10th Amendment separation of federal and state powers, and it is absurd to imagine that the federal government would have such power." Dkt. #53, p.16. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Because the defendant was required to register as a sex offender and update his registration status under the laws of Colorado, Florida, Arizona and New York, SORNA's requirements do not impose any additional requirements upon him which he does not already have under multiple states laws. Again following Judge McAvoy's reasoning in *United States v. Van Buren, Jr.*, "[h]e [the defendant] 'has not suffered any injury as a result of Congress' alleged commandeering of state officials' and, without an injury causally related to the complained-of conduct, he lacks standing to assert his Tenth Amendment claim." *United States v. Van Buren, Jr.*, 2008 WL 3414012, at *15 (N.D.N.Y. Aug. 8, 2008), *citing United States v. Waybright*, 561 F.Supp.2d 1154, 1169 (D. Mont. 2008) and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 251 (1992).

**Additional Arguments**

In addition to the foregoing, the defendant raises the following arguments in support of his *pro se* motion to dismiss: that SORNA infringes on the defendant's right to privacy; SORNA is discriminatory insofar as other criminals (including those "significantly more dangerous" than defendant) are not required to register; and, SORNA violates the Due Process Clause. The defendant's arguments that SORNA interferes with his right to privacy and that it is discriminatory are without merit. In fact the United States Supreme Court has previously addressed this issue when considering the Alaska Sex Offender Registration Act and has found that "the imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded.'" *Smith v. Doe*, 538 U.S. 84, 93 (2003), *citing*, *Kansas v. Hendricks*, 521 U.S. 346, 363, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

With respect to the defendant's arguments that SORNA violates the Due Process Clause, the Court notes that those arguments were also raised by counsel for the defendant in a separate motion (Dkt. #52) and were also addressed by this Court in a previous Report, Recommendation and Order (Dkt. #26). The Court once again incorporates by reference herein its previous Report, Recommendation and Order wherein it recommended that defendant's motion to dismiss the original Indictment be denied. Accordingly, for the reasons set forth above and for those reasons set forth in this Court's previous Report, Recommendation and Order (Dkt. #26), it is hereby

recommended that the defendant's *pro se* motion to dismiss the Superseding

Indictment be denied in its entirety.

## Motion to Suppress - Inventory Search

Although not articulated as part of the original omnibus motion (Dkt. #52),

during the evidentiary hearing, counsel for the defendant articulated a separate theory

on which to seek suppression of the physical evidence, *to wit*, an illegal search of the

defendant's vehicle conducted under the guise of an inventory search.  Both during the

evidentiary hearing and in the post-hearing memoranda submitted by the parties, the

issues of the propriety of the decision to tow the defendant's vehicle and to conduct an

inventory search of the defendant's vehicle were addressed.  For the reasons set forth

below, this Court finds that the towing of the defendant's vehicle and the inventory

search were done in accordance with an established policy of the Amherst Police

Department.  This Court further finds that because the tow and inventory search were

done to protect the defendant's property while in the custody of the police, the tow and

the inventory search were reasonable and fall within the well-defined exception to the

warrant requirement of the Fourth Amendment.

As discussed above, the Amherst Police Department's policy regarding

towing, impounding and inventorying of vehicles has been in effect since 1991.

Specifically, with respect to conducting an inventory, the policy states, in part,

> \*      An inventory will be conducted on all vehicles towed
> at the direction of a police officer unless a vehicle is

> to be processed [ ] evidence or is towed at the
> owner's request.
> * The purpose of the inventory is to protect against
> false claims of lost, stolen or vandalized property and
> to guard against [ ] storage of dangerous articles.

Government Exhibit 4. With respect to the tow and inventory search of the defendant's

vehicle on February 14, 2008, Lieutenant Fels testified that he recalled receiving a call

from Officer Scioli on February 14, 2008 concerning an arrest that had been made at

the NOCO service station on Main Street and Youngs Road and requesting

authorization for a tow. Dkt. #66, pp.40-41. Lieutenant Fels further testified that he

authorized the tow because "it's [Amherst Police Department] policy, when an arrest is

made, to impound the – to tow the vehicle and impound it for reasons of safekeeping

and possible evidentiary discovery." *Id*. at p.41. Thereafter, the tow company was

contacted and a tow truck was dispatched and while waiting for the tow truck to arrive,

Officer Scioli began the inventory search of the defendant's vehicle. Dkt. #66, pp.21-

22. Shortly after he began the inventory, Officer Scioli testified that he found pieces of

identification in names other than that of the defendant, a computer and some

computer equipment. *Id*. at p.23. After locating the pieces of identification, Officer

Scioli again contacted Lieutenant Fels and Lieutenant Fels ordered Officer Scioli to

have the vehicle towed to the Amherst Police Department. *Id*. at pp.23-24.


Once the vehicle was towed to the Amherst Police Department, Officer

Scioli testified that he continued with the inventory search. *Id*. at p.24. Officer Scioli

further testified that in addition to the items referenced above, he also located a tripod,

a camera and adult pornography.  *Id.*  Specifically, the following items were found during the inventory search of the vehicle:  three out-of-state identification cards each bearing the defendant's photograph, however, each card listed a different name; a Green Dot Visa debit card in the name of Jerome Kacmarek; a briefcase; a Dell Inspiron laptop computer; electronic storage media; and boxes of adult pornographic magazines and videos.  Dkt. #56, p.7.

"[I]nventory searches[8] are now a well-defined exception to the warrant requirement of the Fourth Amendment."  *Colorado v. Bertine*, 479 U.S. 367, 370 (1987). "Such searches are deemed reasonable under the Fourth Amendment because 'inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'" *United States v. Thompson*, 29 F.3d 62, 65 (2d Cir. 1994), *quoting Bertine*, 479 U.S. at 372.  Thus, "[a]n inventory search pursuant to standardized procedures will be upheld unless there is a showing that the Government acted in bad faith or searched the car for the sole purpose of investigation."  *United States v. Arango-Correa*, 851 F.2d 54, 59 (2d Cir. 1988).  Although "an inventory search must not be a ruse for general rummaging in order to discover incriminating evidence," *Florida v. Wells*, 495 U.S. 1, 4 (1990), an investigatory motive will not invalidate an objectively justifiable inventory search.  *Whren v. United States*, 517 U.S. 806, 816 (1996).

---

[8] "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage."  *Whren v. United States*, 517 U.S. 806, 811, n.1 (1996).

So long as the search is done in accordance with an established policy or practice designed to produce an inventory, police officers retain discretion in the scope and conduct of an inventory search. *Florida v. Wells*, 495 U.S. at 4. Thus, law enforcement officials may open closed containers as part of an inventory search so long as they act in good faith pursuant to standardized criteria or established routine. *Thompson*, 29 F.3d at 65. "The existence of such a valid procedure may be proven by reference to either written rules and regulations or testimony regarding standard practices." *Id.* (citations omitted). If the police officers "act in bad faith or solely for the purpose of investigation," however, the "fruit" of the inventory search "will be suppressed." *Id.*

In *Bertine*, a police officer stopped defendant's van and arrested him for drunken driving. *Bertine*, 479 U.S. 368. After defendant was taken into custody, but before the arrival of a tow truck to take his vehicle to the impound lot, a police officer inventoried the contents of the van. *Id.* at 369. The officer observed a closed backpack behind the front seat of the van. *Id.* He opened the backpack, a nylon bag inside the backpack, and metal canisters inside the nylon bag, discovering controlled substances inside the metal canisters. *Id.* The Supreme Court determined that the evidence was admissible because the police discovered it during the course of an inventory search conducted in accordance with departmental procedures mandating the opening of closed containers and the listing of their contents. *Id.* at 374, n.6.

In the instant case, the defendant was arrested outside the NOCO Service Station on Main Street and Youngs Road on a warrant from Arizona and the warrant indicated that Arizona intended to extradite the defendant. At the time of his arrest, the defendant's vehicle was parked in the NOCO parking lot. Consistent with Amherst Police Department policy, Lieutenant Fels authorized the tow and impound of the vehicle for purposes of possible evidence preservation and safekeeping. Thereafter, also consistent with Amherst Police Department policy, an inventory search was conducted of the defendant's vehicle. This Court finds that the Amherst Police Department acted in conformity with the established policy and were exercising their community caretaking functions in towing and impounding the defendant's vehicle. Accordingly, this Court further finds that the inventory search of the defendant's vehicle was reasonable and recommends that the defendant's motion to suppress be denied.

## Motion to Suppress Evidence

In support of his motion to suppress physical evidence, the defendant argues that "the information contained in the Affidavit of [Secret Service Special] Agent [Michael A.] Spiess was insufficient to establish probable cause to believe that the laptop computer contained incriminating evidence, and the search of the computer violated the defendant's constitutional rights." Dkt. #52, p.4. The government has opposed the defendant's motion arguing that the search warrant was supported by probable cause and that the child pornography located on the computer during the execution of the search warrant was lawfully seized because it was in plain view. Dkt. #56.

In determining whether probable cause exists for the issuance of a search warrant, the United States Supreme Court has stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis . . . for [conclud[ing] that probable cause existed." (citation omitted). We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli*.

*Illinois v. Gates*, 462 U.S. 213, 231, 238-239 (1983).

As the Court of Appeals for the Second Circuit stated:

> A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden. "Where [the] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . . [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). In particular, where the officer requesting the search warrant relies on an informant, the magistrate's role is to examine the totality of the circumstances and to
>
> > make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the

> magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see United States v. Feliz-Cordero*, 859 F.2d 250, 252-53 (2d Cir. 1988).

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).


As summarized by the government in its response to the instant motion to suppress, Special Agent Spiess' affidavit submitted in support of the search warrant established the following facts (the citations at the conclusion of each bullet point correspond to the paragraph in Special Agent Spiess' affidavit):

- At the time of the defendant's arrest, three counterfeit out-of-state identification cards bearing the defendant's photo were found in the defendant's vehicle, and each card had a different name listed (¶4);
- A Green Dot VISA debit card in the name of Jerome L. Kacmarek was located in the defendant's vehicle (¶4);
- The signatures on the three identification cards appeared to have been written in the same handwriting (¶5);
- The state seals located on the three identification cards are available on the internet and they appear to have been downloaded using the internet (¶5);
- The photographs of the defendant contained on the three identification cards appears [sic] to have been digitally created (¶5);
- Records from Green Dot indicated that the debit card was activated by the defendant, that the card was mailed to the defendant, and that the defendant used the internet to access his account information on the Green Dot website (¶¶6, 9);
- The defendant spoke to an individual about creating counterfeit identification cards using his computer, that individual observed the defendant using his

laptop computer on the internet, and that the person listed on at least one of the three identification cards knew the defendant (¶10).

Dkt. #56, pp.10-11.  In sharp contrast, the defendant's motion to suppress suggests that the only facts this Court had before it when considering the application for a search warrant were:

- On February 14, 2008, the defendant was arrested based on a Warrant that was issued from Arizona. The defendant's vehicle was searched and inventoried.  The inventory search resulted in the discovery of some UCC Identification cards, the [sic] alleged adult pornographic material, a laptop computer, a digital camera, writeable compact disks, a USB memory stick, a video camcorder, and a briefcase.
- The search of the briefcase revealed computer floppy disks.
- Additionally, a green dot Visa debit card in the name of Kacmarek was located in the vehicle.
- The police spoke with a former roommate of Norman Caraway whose name is Charles Kerr.  Mr. Kerr allegedly gave the police information about Mr. Caraway's activities in connection with the computer.

Dkt. #52, ¶¶ 7-10.  The defendant argues that based on the foregoing facts, this Court issued a warrant to search, *inter alia*, the computer that was found in the defendant's vehicle.  *Id*. at ¶ 11.  Notably, the only legal theory propounded by the defendant in support of his argument that the search warrant was not supported by probable cause is, as follows, "[w]e submit that this sparse information [quoted above] does not constitute probable cause and therefore, that the search warrant was issued in violation of the defendant's constitutional rights.  The evidence obtained as a result of that search warrant should be suppressed."  *Id*. at ¶ 12.

This Court is not persuaded by the defendant's selective reading of Special Agent Spiess' affidavit. To the contrary, as quoted above, the government summarized the information presented in Special Agent Spiess' affidavit and this Court concludes that it had a "substantial basis . . . for [conclud[ing] that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 231, 238-239 (1983). This Court agrees with the conclusions recited by the government in its opposition to the instant motion to suppress, "[s]tated simply, the affidavit provided a substantial basis for [this Court] to believe: (1) that the defendant created the counterfeit identification cards located in his vehicle; (2) the defendant used his laptop computer and other electronic storage media to create these identification cards; and (3) that evidence pertaining to the defendant's creation of these identification cards would likely be found during the search of the property sought." Dkt. #56, pp.11-12. This Court finds that the defendant has failed in his burden to invalidate the search warrant and that his argument that probable cause was lacking for issuance of that warrant is without legal merit. Therefore, it is recommended that the defendant's motion to suppress the evidence seized pursuant to that warrant be denied.

Alternatively, the defendant argues that assuming, *arguendo,* that there was sufficient probable cause to issue the warrant, the warrant only authorized the search of the computer for evidence having to do with the crime of identity theft and that during the course of the search, child pornography was found and that child pornography is the subject of Count 2 in the Superseding Indictment. Dkt. #52, ¶ 13. The defendant further asserts that, contrary to the government's view, the child

pornography found on the computer was not in "plain view" and as such, there was no right for law enforcement to "look at it, examine it, and/or seize it" and therefore, it must be suppressed.  *Id*. at ¶ 14.

> . . . The "plain view" exception of the fourth amendment warrant requirement "authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity."  *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983).  Under this exception to the fourth amendment requirement, a police officer may seize evidence when in "plain view" if: "(1) the officer's initial intrusion was permissible under the fourth amendment; (2) the discovery of the evidence was "inadvertent;" and (3) the incriminating nature of the evidence found is "immediately apparent." (citation omitted).

*United States v. Scopo*, 19 F.3d 777, 782 (2d Cir.); *cert. denied*, 513 U.S. 877 (1994).

> It is well settled that, under the "plain view" doctrine, law enforcement personnel may seize an item without a warrant provided that it is "immediately apparent that the object is connected with criminal activity," and further provided that the officers viewed the object from a lawful vantage point - i.e., that the officers "have not violated the Fourth Amendment in arriving at the place from where they can see" the object.  *United States v. George*, 975 F.2d 72, 78 (2d Cir. 1992); *see also Horton v. California*, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).  The determination of lawful vantage point must focus on the activity which brought the object into plain view - here, the search of the briefcase by airport security personnel.  As long as the scope of that initial search comported with the Fourth Amendment - i.e., was no more intrusive than necessary to accomplish its purpose of detecting weapons

or explosives - then it is of no constitutional moment that the object found was not what was sought.  As the district court correctly noted, "[t]hat lack of relationship *always* exists with regard to action validated under the 'plain view' doctrine."

*United States v. $557,933.89, More or Less, In U.S. Funds*, 287 F.3d 66, 81-82 (2d Cir. 2002); *see also United States v. Scopo*, 19 F.3d 777, 782 (2d Cir.); *cert. denied*, 513 U.S. 877 (1994).

Here, the three criteria for determining whether evidence may be seized in plain view as set forth above in *United States v. Scopo* have been satisfied.  First, by reason of the search warrant that had been issued by this Court, the forensic examiner was authorized to search the computer and the electronic storage media for evidence pertaining to the crime of identity theft.  Second, the forensic examiner was specifically authorized to search "any and all data and information, in whatever format (documents, files, text, and images) as may be evidence of violation of 18 U.S.C. Section 1028(a) (identity theft)...".  Dkt. #56, p.23.  Based on the foregoing, the forensic examiner was authorized to access the files which ultimately contained child pornography and therefore, such discovery was inadvertent.  Third, the incriminating nature of the evidence found was readily apparent to the forensic examiner.   Accordingly, the circumstances herein easily satisfy the three criteria articulated in *United States v. Scopo* authorizing the seizure of evidence found in plain view and it is therefore recommended that defendant's motion to suppress be denied.

**Motion to Suppress Statements**

   In his omnibus motion, the defendant seeks the suppression of statements made by the defendant to North Tonawanda Police Office Josh Cress, Amherst Police Officer Scott Preston, Amherst Police Detective Matt Gould, and FBI Special Agent Michael Shaffer.  Dkt. #52, p.6.  In support of his motion and request for an evidentiary hearing, the defendant submitted an affidavit stating generally that he was never, at any time, given his *Miranda* rights.  Dkt. #58.  Thereafter, this Court issued a Decision and Order (Dkt. #59) finding the need to hold an evidentiary hearing with respect to the following four issues.  First, whether the defendant's August 12, 2007 encounter with North Tonawanda Police Department Officer Josh Cress resulted in a custodial interrogation, and if so, whether the defendant was given *Miranda* warnings prior to the interrogation and whether the defendant's statements given to Officer Cress were voluntary.  Second, whether the statements given by the defendant to Amherst Police Department Officer Scott Preston on February 14, 2008 were made during a custodial interrogation, and if so, whether the defendant was given *Miranda* warnings prior to the interrogation and whether the defendant's statements given to Officer Preston were voluntary.  Third, whether the interview of the defendant conducted by Amherst Police Department Detectives Matthew Gould and Warren Olsen on February 14, 2008, following the defendant's arrest and an inventory search of the vehicle driven by the defendant, was a custodial interrogation, and if so, whether the defendant was given *Miranda* warnings prior to the interrogation and whether the defendant's statements to Detectives Gould and Olsen were voluntary.  And fourth,

whether prior to the February 25, 2008 interview of the defendant at the Erie County Holding Center by FBI Special Agent Michael Shaffer and FBI Task Force Officer Joseph Ahmed, the defendant was given *Miranda* warnings and whether defendant's statements were voluntary. *Id*. The evidentiary hearing was held on October 1, 2009 and continued on October 7, 2009. Dkt. ##65-66.

In *Miranda v. Arizona*, the United States Supreme Court created a procedural mechanism with the purpose of establishing a prophylactic safeguard that would protect a defendant from the coercive nature of custodial interrogation and preserve his Fifth Amendment privilege against self-incrimination. However, before the requirements of *Miranda* come into play, there must be a form of "custody" of the person to be interrogated which "custody" amounts to the deprivation of "freedom of action in any significant way." *Miranda v.* Arizona, 384 U.S. 436, 444 (1966); *Thompson v. Keohane*, 516 U.S. 99, 100-101 (1995); *Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir. 1998); *United States v. Newton*, 369 F.3d 659 (2d Cir. 2004). The defendant bears the burden of proving custody. *See United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984). In making a determination of whether such "custody" existed, the Court must consider the totality of the circumstances. *California v. Beheler*, 463 U.S. 1131, 1125 (1983)*; Tankleff v. Senkowski, supra*. "Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the

degree associated with a formal arrest."  (Citation omitted).  *California v. Beheler* at

1125; *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).  The United States Supreme

Court has "explicitly recognized that Miranda warnings are not required 'simply because

the questioning takes place in the station house, or because the questioned person is

one whom the police suspect'."  *California v. Beheler* at 1125; *Mathiason* at 495.


The Court of Appeals for the Second Circuit has ruled that:


The test used in determining whether a defendant was in custody is an objective one that (a) asks whether a reasonable person would have understood herself to be subjected to restraints comparable to those associated with a formal arrest, and (b) focuses upon the presence or absence of affirmative indications that the defendant was not free to leave.  An accused is in custody when, even in the absence of an actual arrest, law enforcement officials act or speak in a manner that conveys the message that they would not permit the accused to leave.  *United States v. Kirsh*, 54 F.3d 1062, 1067 (2d Cir.) (internal quotation marks and citation omitted, *cert. denied*, 516 U.S. 927, 116 S.Ct. 330, 133 L.Ed.2d 230 (1995); *see also United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (a custodial setting is evidenced by "inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak").

*Tankleff v. Senkowski,* 135 F.3d at 243-244.


As the Court of Appeals for the Second Circuit has stated, the Supreme Court's

decision in *Berkemer* "emphasizes that 'the only relevant inquiry [in determining when a

person is in "custody" for purposes of Miranda] is how a reasonable man in the

suspect's position would have understood his situation'." *Cruz v. Miller*, 255 F.3d 77, 83 (2d Cir. 2001).

## August 12, 2007 Encounter with Officer Cress

On August 12, 2007 at approximately 12:46 a.m., North Tonawanda Police Department Officer Josh Cress responded to a suspicious person report at the Bishop Gibbons Apartment complex located at 1110 Payne Avenue, North Tonawanda, New York. Dkt. #65, p.4. Officer Cress testified during the evidentiary hearing that upon his arrival at the Bishop Gibbons Apartment complex, he observed a gentleman standing by the rear of a vehicle, moving items around and that he asked the gentleman what he was doing and also asked the gentleman for some identification. *Id.* at pp.5-6. In response, the gentleman produced a photo identification in the name "Caraway" and explained that he was there with a friend visiting a friend's father. *Id.* at pp.6-7. Thereafter, Officer Cress testified that he radioed the individual's name and date of birth to dispatch for a warrant check and that check was negative. *Id.* at pp.7-8. Officer Cress further testified that at no time during this approximately ten minute conversation did he ever restrain the individual who identified himself as Caraway or tell him he was not free to leave. *Id.* at p.8. Finally, on cross-examination Officer Cress testified that in all respects his August 12, 2007 encounter with the defendant was a "volunteer encounter." *Id.* at p.9.

In his post-hearing memorandum, the defendant states in a footnote,

> [a]t the suppression hearing, the Government also called
> Tonawanda Police Officer Joshua Cress.  Officer Cress'
> testimony does not bear on the two critical suppression
> issues addressed herein: specifically, whether the search of
> Mr. Caraway's legally parked vehicle contemporaneous to
> his arrest was justifiable as an 'inventory' search and
> whether Lt. Fels[9] Mirandized Mr. Caraway before subjecting
> him to a custodial interrogation at the Amherst Police
> Station.  As such, counsel will not discuss Officer Cress'
> testimony in this memorandum.

Dkt. #68, p.2, n.1.

Notwithstanding the fact that based on the foregoing quotation it appears that the defendant is no longer seeking to suppress any statements made by him to Officer Cress, this Court will nevertheless address that motion.  Based on Officer Cress' testimony during the evidentiary hearing, his encounter with the defendant on August 12, 2007 was purely voluntary.  In fact there is nothing in the record before this Court to support a conclusion that the defendant was ever in custody during the August 12, 2007 encounter.  Accordingly, it is recommended that that portion of defendant's motion to suppress which seeks to suppress any statements made by the defendant to Officer Cress on August 12, 2007 be denied.

**February 12, 2008 Statements to Officer Preston**

On February 14, 2008 at approximately 11:45 a.m., Amherst Police Department Officer Scott Preston responded to a suspicious person call at the NOCO

---

[9] The Court notes that there is nothing in the record before this Court to suggest that Lieutenant Fels participated in any questioning of the defendant at any time.

gas station at Main Street and Youngs Road in Amherst.  Dkt. #65, p.11.  Officer

Preston testified at the evidentiary hearing that "it was reported that an Aztek with

Arizona plates was parked on the lot and that possibly the owner of the vehicle was an

absconder from the State of Arizona."  *Id*.  Officer Preston spoke with the store clerk

who advised him that there were no problems at the store, at which time, Officer

Preston returned to his patrol.  *Id*. at p.13.  Later that day, at approximately 2:45 p.m.,

Officer Preston received a repeat call for a suspicious person at the NOCO at Main

Street and Youngs Road.  *Id*. at p.14.  The call came from a former co-worker of the

"suspicious person" and Officer Preston testified that "I believe that the caller believed

the subject should not have been in the area anymore because of the termination."  *Id*.

The call concerned the same vehicle and the same person as the previous call.  *Id*.  At

approximately 3:00 p.m., Officer Preston arrived at the NOCO gas station and observed

the same Pontiac Aztek parked in the same location in the parking lot.  *Id*. at p.15.

Upon entering the NOCO gas station, Officer Preston testified that he recognized

someone from his first call to that location sitting against the east wall of the NOCO

store working on a computer.  *Id*. at p.16.


            Thereafter, Officer Preston testified that he approached the individual and

asked if he was the owner of the Pontiac Aztek and when the individual replied that he

was, Officer Preston asked him if he was willing to step outside and speak with him.  *Id*.

Officer Preston further testified that the individual was very cooperative and that he

recalled the individual packing up his computer and putting everything away and going

outside with him. *Id*. at p.17. After asking the individual for identification, Officer

Preston testified that he disclosed to the defendant the nature of the call concerning a

suspicious person and he asked the defendant why he was in the area. *Id*. at pp.18-19.

According to Officer Preston, in response, the defendant stated that he was at the

NOCO gas station using the free Internet service to look for jobs in the area. *Id*. at

p.19. In addition, Officer Preston testified that during the conversation the defendant

indicated that he had been in Western New York since August 2007 and further that "he

was a sexual offender and that he had not registered in New York State and did not

even know how to do that." *Id*. Following what Officer Preston described as a cordial

conversation, Officer Preston contacted his dispatcher to run a warrant check on the

defendant. *Id*. at p.21. Officer Preston testified that the dispatcher advised him that

there was a warrant for the defendant, that there were orders on the warrant concerning

extradition and that a further inquiry would need to be made to verify extradition. *Id*. at

p.22. Thereafter, the dispatcher confirmed with Officer Preston the existence of the

warrant and the desire to extradite the defendant. *Id*. At that point in time, Officer

Preston testified that he placed the defendant under arrest. *Id*.


Although the defendant's motion to suppress statements (Dkt. #52) seeks

the suppression of the statements made by the defendant to Officer Preston on the day

of his arrest, February 14, 2008, the defendant does not discuss those statements in

his post-hearing memoranda. *See* Dkt. #68. Rather, the defendant's post-hearing

memoranda focuses principally on the inventory search of the defendant's vehicle and

the suppression of the statements made by the defendant to Detective Gould at the Amherst Police Station. Notwithstanding the foregoing, this Court will nevertheless address the defendant's motion to suppress the statement made to Officer Preston.

As described above, Officer Preston's conversation with the defendant was cordial and there is nothing in the record before this Court to suggest that a reasonable person under the circumstances would not have felt free to leave. The defendant voluntarily complied with Officer Preston's request to speak with him outside and Officer Preston only told the defendant of the suspicious person call received from one of the defendant's prior co-workers. Thereafter, the defendant volunteered to Officer Preston that "he was a sexual offender and that he had not registered in New York State and did not even know how to do that." Dkt. #65, p.19. It was not until after this point that Officer Preston contacted the dispatcher for a warrant check and once information on the warrant and confirmation of extradition was received was the defendant placed under arrest. At no time prior to that point was the defendant restrained in any way. Thus, there is nothing in the record before this Court to support the conclusion that the defendant was in custody at the time he made the statement to Officer Preston that "he was a sexual offender and that he had not registered in New York State and did not even know how to do that." Dkt. #65, p.19. Accordingly, because the defendant was not in custody at the time the statement was made, there was no requirement that the defendant receive his *Miranda* warnings. For the foregoing reasons, this Court recommends that the defendant's motion to suppress his statement to Officer Preston be denied.

**February 14, 2008 Statements to Officer Gould**

Following the completion of the inventory search of the defendant's

vehicle, Amherst Police Department Detectives Matthew Gould and Warren Olsen

interviewed the defendant at the Amherst Police Station. Detective Gould testified at

the evidentiary hearing that on February 14, 2008 in the afternoon/evening, he

interviewed the defendant. Dkt. #66, p.5. Detective Gould further testified that at the

outset of that interview he read the defendant his "Miranda warnings" from the card

taped to the inside of his pocket calendar. *Id*. at p.7. According to Detective Gould,

after he was read his *Miranda* warnings, the defendant stated that he did not wish to

incriminate himself. *Id*. at p.8. However, the defendant did engage in a conversation

with Detective Gould. *Id*. at p.9. Specifically, the defendant stated that he was on

probation from the Phoenix, Arizona area and that he was a level 2 registered sex

offender from Arizona. *Id*. According to Detective Gould, the defendant further stated

that the conditions of his probation provided that he was not to leave the county in

which he lived. *Id*. In addition, Detective Gould testified that the defendant stated that

he left the Phoenix area because of "the stigma that comes along with his situation as

being a registered sex offender. I believe he mentioned some flyers going out, and his

neighbors knew who he was, and there was a stigma attached to that." *Id*. at pp.9-10.

Finally, Detective Gould testified that at no time during the interview did the defendant

ask for an attorney or ask to end the conversation. *Id*. at p.10.

Based on Detective Gould's unequivocal testimony that he read the defendant his *Miranda* warnings before the interview, there is no basis to suppress the defendant's statements. The defendant's argument that Detective Gould could have filmed the interview, taped the interview, memorialized the interview (including *Miranda* warnings), and/or had the defendant sign a waiver of *Miranda* warnings form (*see* Dkt. #68, p.17) are nothing more than suggestions and are not in any way required by *Miranda* or its progeny. Accordingly, for the foregoing reasons, it is recommended that the defendant's motion to suppress the February 14, 2008 statements to Detective Gould be denied.

### February 25, 2008 Statements to FBI Special Agent Shaffer

On February 25, 2008, FBI Special Agent Michael Shaffer and FBI Task Force Officer Joseph Ahmed interviewed the defendant at the Erie County Holding Center. Dkt. #56, p.8. Special Agent Shaffer testified during the evidentiary hearing that prior to the interview, the defendant was advised of his rights, the defendant executed the Advice of Rights form indicating that he understood his rights and was willing to answer questions without a lawyer present. Government Exhibit 1. According to Special Agent Shaffer's testimony during the hearing, during the interview, the defendant admitted that the laptop that was in his vehicle belonged to him. Dkt. #65, p.38. However, the defendant declined to give the agents consent to search the laptop. *Id*. at p.38.

Although the defendant does not address the suppression of the defendant's February 25, 2008 statements to Special Agent Shaffer and Task Force Officer Ahmed in his post-hearing memoranda, this Court will address that portion of the defendant's motion below. There is no dispute that at the time of the February 25, 2008 interview the defendant was in custody at the Erie County Holding Center. During the evidentiary hearing, Special Agent Shaffer testified unequivocally that prior to the interview, he read the defendant his Miranda warnings and thereafter, the defendant executed the Advice of Rights form indicating that he understood his rights and was willing to answer questions without a lawyer present. Dkt. #65, pp.34-36. Based on the foregoing, it is recommended that defendant's motion to suppress his statements to Special Agent Shaffer and Task Force Officer Ahmed be denied.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order**. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:      Buffalo, New York
            January 14, 2010


                              *s/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**